UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| AMY SHERRARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 3:17-cv-735-DJH |
| | ) |
| CITY OF VINE GROVE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### I. NATURE OF THE CASE

1. Plaintiff, Amy Sherrard ("Sherrard" or "Plaintiff"), by counsel, brings this action against Defendant, City of Vine Grove ("Defendant"), alleging violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et. seq.* and the Kentucky Civil Rights Act (KCRA).

### II. PARTIES

2. Sherrard is a resident of Hardin County in the Commonwealth of Kentucky, who at all times relevant to this action resided within the geographical boundaries of the Western District of Kentucky.

3. Defendant is a government entity that is located and conducts business within the geographical boundaries of the Western District of Kentucky.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 28 U.S.C. §1367; and 42 U.S.C.

§12117.

5. Jurisdiction is conferred on Sherrard's state law claims pursuant to 28 U.S.C. §1367 because her state law claims arise from the same common nucleus of operative facts as her federal law claims and all of her claims form a single case and controversy under Article III of the United States Constitution.

6. Defendant is an "employer" as that term is defined by 42 U.S.C. §12111(5)(A) and KRS 344.030(2).

7. Sherrard was an "employee" as that term is defined by 42 U.S.C. §12111(4) and KRS 344.030(5).

8. Sherrard is a "qualified individual with a disability" as defined by the Americans with Disabilities Act, 42 U.S.C. §§12102(2) and 12111(8) and/or Defendant knew of Sherrard's disability and/or regarded Sherrard as being disabled and/or Sherrard had a record of being disabled.

9. Sherrard satisfied her obligation to exhaust her administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging disability discrimination.  Sherrard received the required Notice of Suit Rights and timely files this action.

10. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Western District of Kentucky; thus, venue is proper in this Court.

## IV. FACTUAL ALLEGATIONS

11. Sherrard began working at the Defendant as a temporary employee in January 2016 performing administrative work and was hired by Defendant as a regular employee on or about March 10, 2016.

12. She reported to Jackie Johnson, City Clerk/Treasurer/Human Resources Director.

13. Sherrard suffered a traumatic brain injury in a car accident in 1997. She was also diagnosed with Attention Deficit Disorder in 2016. Due to the traumatic brain injury and ADD, she suffers from bright light sensitivity that causes extreme discomfort when in direct sunlight or in an area with florescent lights, short term memory deficit that causes her to forget recent events, conversations, etc., concentration difficulties in environments with multiple distractions, problems staying on task, and trouble expressing herself verbally.

14. On the morning of _____, Sherrard met with Johnson to discuss her disabilities and need for accommodations. Sherrard gave Johnson a copy of her physician's letter outlining accommodations that should be made for Sherrard's disability. Sherrard discussed the limitations caused by her disabilities with Johnson and requested the following accommodations: (a) a job description with specific duties and expectations of performance; (b) permission to use a tape recorder in meetings and training; (c) the ability to schedule and coordinate important deadlines using Outlook; (d) permission to work with her office door closed; (e) permission to bring in floor and

table lamps so she could turn off overhead lights; (f) permission to work overtime in order to complete any excess or backlog work.

15. Johnson granted Sherrard permission to bring in her own lighting. She also indicated that Sherrard could work as much overtime as necessary. However, Johnson indicated that the Mayor did not want anyone working with their door closed, that he did not trust Sherrard to have a city email account that would allow access to Outlook, and he would not approve of her taping meetings. Johnson said she would work on a job description; however, none was ever provided to Sherrard.

16. Johnson repeatedly refused to provide the tools and environment Sherrard needed to be successful in her job even after being advised of Sherrard's need for accommodations. Instead, Johnson deliberately placed Sherrard in situations and imposed restrictions that would cause Sherrard to fail.

17. On June 9, 2016, Sherrard requested a meeting with the Mayor to discuss the aforementioned issues and reiterate her need for an accommodation. The Mayor refused to meet with Sherrard and, later, Johnson informed Sherrard that all future communication needed to be routed through her.

18. On or about November 17, 2016, Johnson verbally reprimanded Sherrard for not processing payroll in a timely manner. The only time constraint previously relayed to Sherrard was that payroll needed to be completed and ready for distribution on Friday morning on paydays. Since this reprimand occurred on a Thursday afternoon, Sherrard asked what Johnson's expectations were for the timely processing

of payroll. She said, "I don't know but it was always done earlier than this before you started doing it".

19. When Sherrard asked for suggestions on how to expedite the process, she said that was for Sherrard to figure out. Sherrard told Johnson that she was experiencing an increase in interruptions having to answer incoming calls to City Hall, and while it was her understanding that the other staff in the office were to serve as a backup to the front desk clerk when she was busy and couldn't answer the phone, the staff was not providing this support even though they were in their offices.

20. Furthermore, Sherrard again explained that due to her disability the constant interruptions were distracting and made it difficult for her to concentrate and stay focused on the tasks at hand. Most of the phone calls involved inquiries related to front desk activity and, being the least familiar with that area, it took more time for Sherrard to have to research those issues. Sherrard also explained that the traffic and conversations outside of her office was distracting. As an accommodation, Sherrard again requested that she be able to close her door. Johnson refused and reiterated that the Mayor did not want Sherrard working with her door shut. Johnson advised Sherrard to consider their conversation a verbal reprimand and that future counseling regarding this issue would result in a written reprimand which would be placed in her personnel file.

21. On November 28, 2016, when Johnson learned that Sherrard worked overtime on the previous day, she became angry and screamed at Sherrard that she could not work anymore overtime to complete the reconciliations. When Sherrard

explained that she could not get the reconciliations caught up on top of her daily work load, Johnson told Sherrard it was not the city's fault that Sherrard "was slow" and that if Sherrard couldn't get the job done, the city would find someone else who could.

22. As a result of this incident, Johnson told Sherrard that she was going to write her up. When Sherrard began again to request accommodations to reduce the multiple distractions Sherrard had to deal with, Johnson said there would be no further discussion about this and told Sherrard to leave her office.

23. Rather than continue to be harassed, threatened and denied reasonable accommodations necessary to adequately perform her job duties so as to avoid her inevitable termination from employment, Sherrard submitted her resignation from employment. Sherrard was constructively discharged.

## V. CAUSES OF ACTION

### COUNT I: ADA- DISABILITY DISCRIMINATION

24. Sherrard hereby incorporates paragraphs one (1) through twenty-three (23) of her Complaint as if the same were set forth at length herein.

25. Defendant violated Sherrard's rights as protected by the Americans with Disabilities Act, 42 U.S.C. 12101, *et. seq.* by failing to accommodate her and subjecting her to less favorable terms and conditions of her employment due to her disability.

29. Defendant's actions were intentional, willful and in reckless disregard of Sherrard's rights as protected by the ADA.

30. Sherrard has suffered damages as a result of Defendant's actions.

### COUNT II: KCRA- DISABILITY DISCRIMINATION

31. Sherrard hereby incorporates by reference paragraphs one (1) through thirty (30) of her Complaint as if the same were set forth at length herein.

32. Sherrard was discriminated against because of her disability by Defendant failing to accommodate her and subjecting her to less favorable terms and conditions of her employment due to her disability.

33. Defendant willfully and intentionally discriminated against Sherrard on the basis of her disability in violation of the KCRA, KRS 344.040.

34. Sherrard has suffered damages as a result of Defendant's actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Amy Sherrard, respectfully requests that this Court enter judgment in her favor and award him the following relief:

1. Reinstate Sherrard to the position, salary and seniority level she would have enjoyed but for Defendant's unlawful actions; and/or payment to Sherrard of front pay in lieu thereof;

2. All wages, benefits, compensation and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Compensatory damages for Defendant's violations of the ADA and KCRA;

5. Punitive damages for Defendant's violation of the ADA;

6. Costs and attorney's fees incurred as a result of bringing this action;

7. Pre- and post-judgement interest on all sums recoverable; and

8. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych
Andrew Dutkanych
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com
*Counsel for Plaintiff, Amy Sherrard*

## DEMAND FOR JURY TRIAL

Plaintiff, Amy Sherrard, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych
Andrew Dutkanych
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com
*Counsel for Plaintiff, Amy Sherrard*